| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------X<br>JALAL ABODALO,<br><br>                Petitioner,<br><br>    -against-<br><br>SUPERINTENDENT LILLEY,<br><br>                Respondent.<br>-----------------------------------------------------------X | **FILED**<br>**CLERK**<br>12/2/2025 11:59 am<br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE**<br><br>**MEMORANDUM AND ORDER**<br>24-CV-7984 (GRB) |

**GARY R. BROWN, United States District Judge:**

      Petitioner Jalal Abodalo ("Petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence for a course of sexual conduct against a child in the first degree in the Supreme Court of the State of New York, County of Nassau (the "trial court"). On this petition, Petitioner raises several challenges to his conviction, most of which were reviewed on appeal by the New York Appellate Division. *People v. Abodalo*, 178 A.D.3d 1067, 1067 (2d Dep't. Dec. 24, 2019) (*Abodalo I*) (affirming conviction after finding meritless defendant's challenges to venue, sufficiency of the evidence, interpreter errors, exclusion from sidebar conferences, prosecutorial comments during summation and excessive sentence), *leave to appeal denied*, 35 N.Y.3d 967 (April 15, 2020) (*Abodalo II*). Respondent has moved to dismiss on the grounds that the petition is untimely, and defendant has failed to establish a basis for equitable tolling. On the record before the Court, the petition is time-barred and, for the reasons that follow, is DISMISSED.

1

**BACKGROUND**

Petitioner was convicted following a jury trial of one count of first-degree course of sexual conduct against a child on June 21, 2017. DE 8 at 8. In or around September 2017, he retained Patrick Michael Megaro, Esq. to represent him in connection with sentencing, post-conviction motion practice and appeal. *Id.* In December 2017, Megaro filed a motion for a new trial under Criminal Procedure Law § 330.30. *Id.* at 9. The trial court denied the motion in an April 2018 written decision and sentenced Petitioner in June 2018 to a determinate sentence of 14 years to be followed by five years of supervision. *Id.* The sentence was imposed consecutively to a sentence Petitioner was serving based on an earlier conviction for similar conduct. *Id* at 9-10.

That same month, Megaro filed a notice of appeal on Petitioner's behalf. *Id.* at 10. After full briefing, on December 24, 2019, the Appellate Division affirmed Petitioner's judgment of conviction, rejecting many of the same issues raised in the instant petition. *Id.* at 11; *Abodalo I*. On January 21, 2020, Megaro sought leave to appeal to the New York Court of Appeals. DE 8 at 12. Leave to appeal was denied by written court order on April 15, 2020. *See Abodalo II*; DE 8-7.

More than four years later, on November 6, 2024, Petitioner filed the instant petition. DE 1. In his petition, he stated under oath that:

> In December 2019, Mr. Megaro informed me my appeal [to the Appellate Division] was denied and he would file an Appeal to the Court of Appeals. [ ] **It was not until November 2nd, 2023 I received news from the Court of Appeals that in fact an appeal had been filed but an order denying leave to appeal had been issued.**

DE 1 at 14 (emphasis added). In a declaration filed with the New York State Court of Appeals, attached as an exhibit to his petition, Petitioner elucidated this point:

2

> We were informed by Mr. Megaro that the appeal was denied on or about December 24, 2019. At that time, Mr. Megaro informed my wife and myself that he would file an appeal with the Court of Appeals and he also spoke about filing a C.P.L. 440 motion. In March 2020, COVID-19 hit the Court system and for the next two years, when we were able to contact Mr. Megaro, he would inform us that the Court system was basically shut down and nothing was being processed. However, he assured us that he was still following through with the Appeals on my case.
>
> Subsequent to 2021, we began to experience difficulties communicating with Mr. Megaro and having him answer our inquiries. As time passed, lack of communication was exacerbated. The last communication with Mr. Megaro was an e-mail received from him in August 2021. [ ]
>
> **I do not know what steps, if any, Mr. Megaro took to appeal the denial of my 330.30 motion and a direct appeal of the conviction, since our attempts to communicate with him were unsuccessful.**

DE 1-5 at 3-4. This narrative is notably silent on communications Petitioner had with Mr. Megaro in April and May of 2020, an evidentiary gap that would prove revelatory.[1]

On this record alone, though, Respondent moved to dismiss, arguing that the petition was untimely, and these facts failed to warrant equitable tolling. *See* DE 8. After submitting its motion to dismiss—and before Petitioner submitted his reply, Respondent filed a supplemental affidavit. DE 9. An attorney for the firm that had represented Petitioner provided information highly relevant to these proceedings. The supplemental affidavit provides, in part, as follows:

> On April 28, 2025, I received a phone call from Jaime T. Halscott, Esq., Megaro's former partner at Appeals Law Group.
>
> Mr. Halscott informed me that, in response to my inquiry regarding [P]etitioner's case, he had searched the firm's files and located pertinent information.

---

[1] In his papers, Petitioner raised the troubling fact that Megaro was later disbarred in New York (based upon his suspension from practice in North Carolina). However, examination of the reported decision concerning that determination demonstrates that the disbarment determination – substantively unrelated to the Petitioner or, for that matter, any activity in New York – post-dates the relevant time periods in this case. *See Matter of Megaro*, 215 A.D.3d 67, 84 (2d Dep't. April 12, 2023) (ordering Megaro's disbarment in New York based upon an order of suspension by the Disciplinary Hearing Commission of the North Carolina State Bar dated April 27, 2021).

3

> Specifically, Mr. Halscott informed me that the firm's files indicated that Mr. Megaro received the leave application denial from the Court of Appeals via regular mail on April 20, 2020, and, on that same day, Mr. Megaro called [P]etitioner's wife, Reem, and informed her of this development.
>
> The firm's files also indicated that on April 28, 2020, a staff member of the firm arranged a legal phone call between Mr. Megaro and [P]etitioner at Eastern Correctional Facility.
>
> The firm's files further indicate that the call between Mr. Megaro and [P]etitioner took place on May 5, 2020, during which Mr. Megaro explained to [P]etitioner that the Court of Appeals had denied his application for leave to appeal.

DE 9 at 2. The firm supplied contemporaneous notes documenting the calls to Petitioner and his wife. *See* DE 9-1.

Confronted with this information, Petitioner substantially revised his account. Whereas he has consistently maintained, under oath, both to this Court and the state court, that he was unaware of the denial of his appeal until November 2023, he now concedes that "Petitioner does not contest that on May 5, 2020 he spoke with Mr. Megaro and was informed that the application for leave to the Court of Appeals had been denied." DE 11 at 4. In a subsequent submission, Petitioner summarized this turnabout succinctly:

> Respondent basically is accusing me of being a liar because in my Petition, I claimed Appellate Counsel "never told him that his leave application to the Court of Appeals had been denied in April of 2020," and it was not until November 2, 2023 that I learned an order denying Leave had been issued - and then in my Reply, I state that on May 5, 2020, I concede when I spoke to Appellate Counsel, I was informed the Leave had been denied.

DE 14 at 1.

Respondent's motion to dismiss unfolds against this backdrop.

**DISCUSSION**

As the Second Circuit recently observed:

Petitions for habeas corpus by individuals "in custody pursuant to the judgment of a State court" are subject to a one-year statute of limitations under the

4

> Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1). "This statute of limitations 'quite plainly serves the well-recognized interest in the finality of state court judgments.'" *Zack*, 704 F.3d at 919 (quoting *Duncan v. Walker*, 533 U.S. 167, 179, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)); see also *Mayle v. Felix*, 545 U.S. 644, 662, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) ("Congress enacted AEDPA to advance the finality of criminal convictions. To that end, it adopted a tight time line, a one-year limitation period ...." (internal citation omitted)).
>
> AEDPA's one-year statute of limitations applies to "an application" for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs [ ] from [as relevant here] the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

*Clemente v. Lee*, 72 F.4th 466, 471 (2d Cir. 2023). In this case, Petitioner's application for leave to file an appeal with the New York Court of Appeals was denied on April 15, 2020. *Abodalo II*. Petitioner had 90 days to seek a writ of certiorari from the United States Supreme Court. *See* Rule 13(1), Rules of the Supreme Court of the United States. Having failed to do so, the judgment of conviction became final for the purposes of the AEDPA upon the expiry of this period, on July 14, 2020. 28 U.S.C. § 2244(d)(1)(A) (one-year limitation period runs from date judgment becomes final by conclusion of direct review or expiration of time for seeking such review); *Valverde v. Stinson*, 224 F.3d 129, 132 (2d Cir. 2000) (same).

Thus, to be timely under the statute, Petitioner was required to file a petition on or before July 14, 2021. Because the petition was not filed until November 6, 2024, more than three years later, it is untimely. Only one possibility remains: equitable tolling. "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Clemente*, 72 F.4th at 478 (2d Cir. 2023). This doctrine "should be applied only in rare and exceptional circumstances," and only where a petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

5

stood in his way and prevented timely filing." *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 649, (2010)).

Having abandoned his position – repeatedly asserted under oath – that he was never informed that the New York Court of Appeals denied his appeal, Petitioner has shifted to a more nuanced contention: he now claims that the fact that his lawyer discussed other options with him, including filing a C.P.L. § 440 motion, left him with the impression "that my lawyer Mr. Megaro was fighting the case in various forms and there was no final determination." DE 14 at 2. To be sure, the law firm records supplied suggest that, upon the denial of leave to appeal in April 2020, the attorney discussed with petitioner three options: (1) appeal to the U.S. Supreme Court; (2) filing a C.P.L. § 440 motion and (3) the immediate filing of a 28 U.S.C. § 2254 habeas petition. DE 9-1 at 2. While Petitioner's filing of admittedly false sworn statements with this Court and the New York Court of Appeals remains unexplained, the Court will fulfill its obligation to read his *pro se* submissions "to raise the strongest arguments they suggest." *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003).

Petitioner's initial position suggested that the attorney erred in failing to inform him of the New York Court of Appeals' determination. DE 1 at 14. Such conduct, *if* deemed egregious, *might* be sufficient to warrant the application of equitable tolling. *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) ("[E]gregious misconduct on the part of an attorney can, in some circumstances, be sufficiently extraordinary to toll the limitations period"). However, the facts eventually revealed prove far less concerning, as Petitioner's argument now can at best be characterized as a miscommunication between attorney and client concerning next steps, or a misunderstanding on the part of Petitioner. DE 11 at 4 ("So far as Petitioner was concerned, the denial of the leave to file an application to the Court of Appeals, was not final, it was still being

6

fought by Mr. Megaro."). These events do not appear to rise to the level of "egregious misconduct" or an "extraordinary circumstance."

Even if these arguments could be so characterized, Petitioner's efforts to invoke equitable tolling must fail for yet another reason. As the Second Circuit has held:

> Even where the extraordinary circumstances on which the petitioner rests his claim involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time. *See Baldayaque*, 338 F.3d at 153. In other words, the act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition. Particularly because petitioners often are fully capable of preparing and filing their habeas petitions pro se, and pro se status does not in itself constitute an extraordinary circumstance meriting tolling, *see Smith*, 208 F.3d at 18, it would be inequitable to require less diligence from petitioners who are able to hire attorneys than from those who are forced to proceed pro se. In the attorney incompetence context, therefore, the reasonable diligence inquiry focuses on the purpose for which the petitioner retained the lawyer, his ability to evaluate the lawyer's performance, his financial and logistical ability to consult other lawyers or obtain new representation, and his ability to comprehend legal materials and file the petition on his own. *See Baldayaque*, 338 F.3d at 153 (listing factors relevant to reasonable diligence that district court should consider on remand).

*Doe v. Menefee*, 391 F.3d at 175. Here, several factors weigh heavily against Petitioner. First, years elapsed between the expiry of the relevant period and the filing of the petition; though Petitioner invokes delays attributable to COVID and his lawyer's eventual disbarment, he cannot, on this record, demonstrate that "he acted with reasonable diligence." *Id.* at 176. Second, in terms of the petitioner's familiarity with the process and ability to file a habeas petition, it is noteworthy that in March 2021 – a time well within the statute of limitations period here – Petitioner retained separate, distinguished criminal counsel to file a 28 U.S.C. § 2254 petition in this Court to challenge an earlier conviction on similar charges. *See Abadalo v. Lilley*, 21-CV-1311, DE 1 (petition filed by Barket Epstein Kearon Aldea & LoTurco, LLP on Petitioner's behalf.)

7

On this record, Petitioner cannot establish that extraordinary circumstances prevented the timely submission of a habeas petition, or that he acted with appropriate diligence.  Therefore, the AEDPA limitations period is not subject to equitable tolling, and the petition is untimely

**CONCLUSION**

Based on the foregoing, Respondent's motion is granted, and the petition is dismissed with prejudice.  A certificate of appealability shall not issue because Petitioner has not made a substantial showing that she was denied any constitutional rights. See 28 U.S.C. § 2253(c)(2). I certify that any appeal of this Order as to those issues would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal on those grounds. Coppedge v. United States, 369 U.S. 438, 444–45 (1962)

The Clerk of the Court is respectfully directed to mail a copy of this Order to Petitioner and to close the case.

**SO ORDERED.**

Dated:  December 2, 2025
        Central Islip, New York

                                                    /s/Gary R. Brown
                                                    HON. GARY R. BROWN
                                                    UNITED STATES DISTRICT JUDGE